**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**Civil Action No. 3:24-cv-00989-FDW-DCK**

| | | |
|---|---|---|
| CLAUDIA BROWN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **AMENDED COMPLAINT** |
| v. | ) | **(Jury Trial Demanded)** |
| | ) | |
| AMAZON.COM SERVICES LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

NOW COMES Plaintiff Claudia Brown, by and through the undersigned counsel, and hereby files this Complaint against Amazon.com Services LLC ("Amazon" or "Defendant"), and alleging and showing unto this Honorable Court as follows:

## PARTIES

1.     Plaintiff, Claudia Brown is a citizen and resident of Mecklenburg County, North Carolina.

2.     Defendant Amazon.com Services, LLC is, and was at all times relevant, a corporation duly organized and existing under the laws of North Carolina with a registered office located at 2626 Glenwood Avenue, Suite 550, Raleigh, NC 27608, and with its principal place of business in Cabarrus County, North Carolina.

## JURISDICTION & VENUE

3.     Plaintiff re-alleges and incorporates the foregoing paragraphs as if fully set forth herein and further alleges as follows:

4.     This Court has original federal question jurisdiction over Plaintiff's claims herein under 28 U.S.C. § 1343(a)(4) (civil rights action), 28 U.S.C. § 1331 for claims brought under Title

I of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12112 to 12117 (the "ADA"), and under 42 U.S.C. § 2000e-5(f)(3) and 42 U.S.C. § 12203(a) for unlawful discrimination and retaliation in employment.

5.      This Court has further supplemental jurisdiction under 28 U.S.C. §1367 for the claims asserted for discrimination in violation of North Carolina law under N.C.G.S. § 95-240 *et seq* and North Carolina public policy including N.C.G.S. §§143-422.2 and 168A.

6.      This Court has personal jurisdiction over Defendant because Defendant has sufficient minimum contacts in Mecklenburg County, North Carolina, and conducts substantial business in Mecklenburg County, North Carolina, which is located within this judicial district.

7.      Venue is proper in this judicial district because Defendant has substantial business contacts and resides in this district.

## COVERAGE ALLEGATIONS

8.      Plaintiff re-alleges and incorporates the foregoing paragraphs as if fully set forth herein and further alleges as follows:

9.      At all times relevant to this action, Plaintiff Claudia Brown was an "employee" as defined in 42 U.S.C. § 2000e(f).

10.      At all times relevant to this action, Defendant Amazon was an "employer" as defined in 42 U.S.C. § 2000e(b).

11.      At all times relevant to this action, Plaintiff was a "qualified individual" covered by the protections of the ADA, as amended, within the meaning of 42 U.S.C. § 12111(8).

12.      At all times relevant herein, Defendant was a "covered entity" engaged in an industry affecting commerce within the meaning of 42 U.S.C. § 12111(2) and had at least fifteen (15) or more employees each working day.

13. At all times relevant herein, Plaintiff was an "employee" within the meaning of 42 U.S.C. §12111(4).

14. Defendant is an "employer" within the meaning of 42 U.S.C. §12111(5).

15. Defendant employed at least fifteen (15) employees at all relevant times.

16. Plaintiff satisfied her obligation to exhaust her administrative remedies by timely filing a Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") (Charge No. 430-2022-01577) alleging race, color, national origin, and disability discrimination, and retaliation based on her disability within 180 days of her termination from employment and other adverse employment actions. The EEOC issued a Notice of Right to Sue and sent it to Plaintiff on August 22, 2024. Plaintiff received the Notice of Right to Sue on August 22, 2024.

17. Plaintiff satisfied her obligation to exhaust her administrative remedies by timely filing a Charge of Discrimination against Defendant with the North Carolina Department of Labor, Retaliatory Employment Discrimination Bureau ("NCDOL") (File No. 202756) alleging retaliation for filing an OSHA complaint and for filing a workers' compensation action. The NCDOL issued a Notice of Right to Sue and sent it to Plaintiff on November 21, 2023. Plaintiff received the Notice of Right to Sue on November 21, 2023.

18. After receiving the Notice of Right to Sue from the NCDOL, Plaintiff timely filed a Complaint on February 14, 2024 within 90 days of that Notice of Right to Sue.

19. Plaintiff timely brings this action within ninety (90) days of receipt of the Notice of Right to Sue from the EEOC and timely files this Amended Complaint following the filing of the February 14, 2024 Complaint regarding the NCDOL Notice of Right to Sue.

3

20.     Plaintiff files this Amended Complaint within 21 days after service of Defendant's motion under Rule 12(b) pursuant to Rule 15(a), Fed. R. Civ. P.

21.     This Plaintiff's Amended Complaint regarding the February 14, 2024 Notice of Right to Sue relates back to the original timely filing of the Complaint on February 14, 2024 pursuant to Rule 15(c) of the Federal Rules of Civil Procedure.

## FACTUAL ALLEGATIONS

22.     Plaintiff re-alleges and incorporates the foregoing paragraphs as if fully set forth herein and further alleges as follows.

23.     Plaintiff began working for Amazon in or about February of 2020.

24.     In or about June 2020, Plaintiff reported a workplace injury to her elbow and developed a disability as a result of that workplace injury.

25.     Plaintiff was one of multiple employees who were injured in her department; however, Plaintiff was the only one who filed a workers' compensation action due to that work-related injury which occurred during the course and scope of her employment.

26.     Plaintiff's filing of a workers' compensation claim is a protected activity under North Carolina law.

27.     After Plaintiff's injury, Plaintiff was out of work for over a year due to medical restrictions.

28.     Plaintiff returned to work on or about January 27, 2022 with work restrictions such as no lifting, pulling, or pushing over 5 pounds.

29.     On or about March 16, 2022, Plaintiff witnessed two management employees—Yolanda McGee and Susan [last name unknown] berating, and, what Plaintiff believed to be, racially discriminating against and harassing another African American/black male employee

while at Plaintiff's desk.

30.     Even though Amazon's mask mandate had been lifted, wearing face masks in the workplace was still optional.  The male employee was wearing a safety mask and at the end of the conversation between the male employee and Yolanda and Susan, Yolanda and Susan threatened the male employee with disciplinary action if he was caught wearing a mask again in the workplace.

31.     Upon information and belief, the male employee submitted an internal complaint along with a written statement detailing the behavior of Yolanda and Susan.

32.     Plaintiff supported the male employee in complaining about what Plaintiff believed to be racial discrimination and harassment and submitted her own complaint of racial discrimination and a statement along with the male employee's complaint.

33.     During Plaintiff's employment, Amazon had a donation and exchange box containing various books and kids' items for the employees.  The Donation and Exchange Box in question was a box located in the Amazon break room with a sign that said: "you can take a book on your lunch break or on your day off" and Amazon supervisors and Human Resources ("HR") verbally told employees that they could take any book they want.

34.     Accordingly, the donation box was for all Amazon employees to take books as they pleased.

35.     Plaintiff had previously donated over a dozen books (which she purchased in a set) to the Donation and Exchange Box as well as donated various toys from her son to the Donation and Exchange box but had not taken anything from the box at that point.

36.     On or about March 19, 2022, in exchange for leaving over a dozen books in the Donation and Exchange Box, Plaintiff, prior to taking anything from the box, first asked Shevon

(last name unknown) in HR if it was okay for her to take any books, knowing that she had donated multiple items already to the box.

37.     Shevon stated "yes, take whatever you want, they're for free" allowing Plaintiff to take the books.

38.     Thereafter, after confirming with HR that doing so was permitted, Plaintiff took three books and a soft toy from the Donation and Exchange Box for her son to read, after previously donating over a dozen books along with some toys to the same box as instructed by the sign on the box.

39.     Plaintiff's supervisors and HR knew that Plaintiff took these books and soft toy at or near the time Plaintiff took them, but no action was taken against Plaintiff at that time.

40.     Approximately a week later on March 24, 2022, Plaintiff complained to Yolanda that she was being treated differently than her Caucasian co-workers.  While discussing the differential treatment, Yolanda McGee stated to Plaintiff, "can't you see the color of your skin, you are black!"

41.     Two days later on March 26, 2022, for the first time in her prior two (2) years of employment with Amazon, Yolanda McGee and another supervisor, Noelle Hope, approached Plaintiff and accused her of a dress code violation.

42.     Yolanda and Noelle first alleged that Plaintiff's shorts that she was wearing over her long leggings were too short.

43.     When Plaintiff showed that contention to be false, Yolanda and Susan then changed the issue with Plaintiff's pants stating that the leggings Plaintiff had on were "see-through."

44.     At the time, Amazon's dress code policy stated as follows regarding "bottoms:"

6

**BOTTOMS**
- Fits appropriately
- Excessive looseness is unsafe
- Always above shoe level
- Mid-thigh or longer

45.     At the time on March 26, 2022, Plaintiff was wearing full length brown leggings which fit Plaintiff appropriately, were relatively tight-fitting (no looseness), above shoe level, and stopped at Plaintiff's ankle above Plaintiff's shoes.

46.     Plaintiff's pants were 100% within Amazon's dress code policy.

47.     Plaintiff had also worn those leggings in the workplace at Amazon multiple times over two (2) years prior to March 26, 2022, and was allowed to do so with impunity, without issue, discipline, or even a comment from any supervisor that those pants were not allowed.

48.     March 26, 2022 was the first day that anyone had said anything to Plaintiff about those particular pants/leggings that Plaintiff wore.

49.     In addition to the long brown leggings that Plaintiff was wearing on March 26, 2022, Plaintiff was also wearing another pair of identical black leggings directly underneath the brown leggings that Plaintiff was wearing as well as a pair of shorts on top of both pair of leggings.

50.     Plaintiff showed her pants to Yolanda and Noelle, as well as showed them the black leggings that were underneath the brown leggings—proving that her legging pants were not "see-through."

51.     Yet, Yolanda and Noelle aggressively and loudly insisted that Plaintiff was nonetheless in violation of the dress code policy—without further explanation—and insisted that Plaintiff either wear a dirty pair of pants presumably from the lost and found presented by Yolanda and Noelle, or be sent home.

7

52.     The pants that Yolanda and Noelle brought to Plaintiff for Plaintiff to change into were dirty, multiple sizes too big, did not fit Plaintiff appropriately, and fit too loosely on Plaintiff.

53.     The pants that Yolanda and Noelle requested Plaintiff change into were in violation of Amazon's dress code policy—not Plaintiff's pants.

54.     When Plaintiff declined to put on pants that would violate Amazon's dress code policy, that did not fit her, and of which were unsafe for her to wear in the warehouse, Yolanda, Noelle, or Susan, called the police on Plaintiff or caused the police to be called on Plaintiff to remove her from the premises.

55.     When the police arrived, Plaintiff was told to leave the premises or be arrested and informed her that she was banned from Amazon property.

56.     Thereafter, on March 26, 2022, Plaintiff filed complaints against Yolanda, Noelle, Susan and others with Amazon's Ethics Hot-Line Investigative Team complaining of discrimination, harassment, and retaliation based upon her race, national origin, disability, filing a workers' compensation action, and more.

57.     The next day on or about March 27, 2022, a picture was taken of another employee who was wearing the exact same type of legging pants that Plaintiff was wearing the day before and was almost the exact same color. That employee was not disciplined, required to change clothes, nor suffered any adverse employment action for a dress code violation.

58.     Two days after the March 26, 2022 incident on or about March 28, 2022, another Caucasian employee was photographed wearing long black legging pants, except her legging pants by design had multiple holes down the side of both legs of the pants from the top of the thigh all the way down to the bottom of the pants close to the Caucasian employees' ankles. As shown below, those legging pants were actually see-through by design and the Caucasian

employee was not wearing any other clothing on her legs underneath the leggings so that you could see the employee's skin through the holes. That employee was not disciplined, required to change clothes, nor suffered any adverse employment action for a dress code violation.



59.     When that Caucasian employee with the see-through legging pants with the holes on the side was asked was any action taken against her, the employee stated that she was not sent home, nor did anyone say anything to her about the pants. When asked about the leggings themselves, the employee stated that she "loves them" and that she "wears them all the time to work."

60.     After March 26, 2022, another employee was photographed wearing shorts above mid-thigh level in violation of Amazon's dress-code policy. That employee was not disciplined, required to change clothes, nor suffered any adverse employment action for a dress code violation.



61. Another employee posted a video on the social media platform known as TikTok wearing a pair of light brown leggings similar to the leggings that Plaintiff was wearing on March 26, 2022, however, those leggings appear to be much lighter than the legging pants that Plaintiff was wearing. The employee with the light brown leggings is also seen in the video wearing a very loose-fitting button-up shirt, unbuttoned hanging from the employee's sides, while standing next to a production line with multiple nip points. The employee is also shown wearing a crop-top showing part of her mid-section or torso. That employee was not disciplined, required to change clothes, nor suffered any adverse employment action for a dress code violation.



62.     As shown below, another employee was found in a photograph on Amazon's website wearing green leggings which appear to be the same type and style of legging pants that Plaintiff was wearing on March 26, 2022.  Upon information and belief, the employee was not disciplined, required to change clothes, nor suffered any adverse employment action for a dress code violation.





63.     As a result of fabricated dress-code violation, Plaintiff was placed on suspension.

64.     Plaintiff also called the North Carolina Occupational Safety and Health Administration ("NC OSHA") to complain about safety violations and concerns surrounding Amazon requiring Plaintiff and others to perform unsafe tasks without proper training which can and has led to injury.

65.     Yolanda and Susan's actions against Plaintiff were a pretext for illegal discrimination based on Plaintiff's race, color, national origin, disability, filing a workers' compensation action, and filing a complaint with NC OSHA.

66.     On or about April 3, 2022, Plaintiff filed a charge of discrimination with the EEOC.

67.     On or about April 4, 2022, Plaintiff filed a charge of discrimination with the NCDOL alleging illegal retaliation.

68.     On or about April 25, 2022, Plaintiff filed another charge of discrimination with the NCDOL alleging retaliation for filing a workers' compensation claim and for filing a claim with NC OSHA.   Plaintiff also on that day filed another complaint with NC OSHA.

69.     Amazon knew that Plaintiff had called NC OSHA to report a safety concern and violation at Amazon.

70.     On May 12, 2022, after having previously called the police on Plaintiff and having

her physically removed from the property for a dress-code violation or face arrest, Amazon contacted Plaintiff while she was out on suspension and informed Plaintiff that she was free to return to work on May 13, 2022.

71.     Plaintiff returned to work on May 13, 2022, but, however, was not allowed to work.

72.     When Plaintiff returned to work on May 13, 2022, Plaintiff discovered that her security badge was no longer working.  They brought her into the HR office and accused Plaintiff of stealing books from the Amazon Donation and Exchange Box on March 19, 2022—almost two months prior.

73.     Plaintiff was placed back on suspension.

74.     As stated above, Plaintiff did not steal anything.  The box in question was a donation box for employees to take and exchange books for others.  Plaintiff donated four (4) times as many books to the donation box as she retrieved and was specifically informed that she was allowed to do so at the time it occurred.

75.     According to Amazon's Standards of Conduct, theft is a Category 1 violation and "results in immediate termination of employment."

76.     Amazon alleged that they received the alleged report of theft from a "coworker" on March 23, 2022—almost two months prior to Amazon approaching Plaintiff with the theft allegation.

77.     However, after allegedly receiving this report of Plaintiff's alleged "theft" Amazon took no adverse action against Plaintiff related to the alleged "theft" for almost two (2) months.

78.     On June 3, 2022, three (3) weeks after Plaintiff returned to work after placing

13

Plaintiff back on suspension, Amazon terminated Plaintiff's employment stating "On 3/19/22, you were observed taking books and a toy from a donation box. . . . This is a Category 1 violation in Amazon's Standards of Conduct . . . and results in immediate termination of employment."

79. Amazon stated that they received an alleged report on March 19, 2022 that Plaintiff committed theft (which Plaintiff adamantly denies)—an offense that warrants immediate termination—yet Amazon failed to take this "immediate" action of terminating Plaintiff's employment until almost two (2) months after the alleged report but within days and weeks after Plaintiff made multiple complaints to HR, the Amazon Ethics Hot-Line, NC OSHA, and after Plaintiff filed charges of discrimination with the EEOC and NCDOL alleging race, color, national origin, and disability discrimination, and illegal retaliation.

80. Notably, Amazon alleged that the alleged theft occurred on March 19, 2022 and that Amazon received the report from a co-worker regarding the alleged theft four (4) days later on March 23, 2022. Thereafter, on March 26, 2022, as alleged above, Amazon actually called the police on Plaintiff for the dress-code violation. When Amazon called the police to have Plaintiff removed from the property, Amazon made no mention whatsoever to the police or any other law enforcement agency of the alleged "theft" even though Amazon admitted that it had received the report of the alleged "theft" just three days prior.

81. Amazon's stated reason for terminating Plaintiff's employment was and is clear pretext for discrimination against Plaintiff for her membership in multiple protected classes and for engaging in protected activities.

82. After this incident, Amazon changed the sign above the Donation and Exchange Box to state

"Take One Bring One
Grab a book from the shelf to read during break or on your day off all we

ask is that you bring it back or you bring one you no longer want to read to let someone else enjoy the book."

## FIRST CAUSE OF ACTION
### (Race, Color, and National Origin Discrimination in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 *et seq.*)

83.     Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

84.     Defendant Amazon terminated Plaintiff's employment for reasons based on, because of, and motivated by Plaintiff's membership in protected classes such as race, color, and national origin in violation of Title VII of the Civil Rights Act of 1964, as amended in 1991, 42 U.S.C.A. § 2000e-2 *et seq.*

85.     As a direct and proximate cause of Defendant's illegal and discriminatory termination of Plaintiff's employment, Plaintiff has suffered substantial damages including but not limited to, back and front pay, benefits associated with her employment, and has suffered and continues to suffer emotional distress, anxiety, depression, embarrassment, and humiliation. Plaintiff is entitled to general and special damages, economic damages, punitive damages, and attorney's fees and costs as permitted by law.

## SECOND CAUSE OF ACTION
### (Retaliation based on Race, Color, and National Origin in Violation of 42 U.S.C. § 2000e-5(f)(3))

86.     Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

87.     Plaintiff engaged in protected activities and when she complained about race, color, and national origin discrimination on behalf of herself and another employee, and when she filed

charges of discrimination, complaints, and claims with the EEOC, NCDOL, NC OSHA, and the Amazon Ethics Hot-Line during her employment.

88.     Defendant Amazon retaliated against Plaintiff in violation of Title VII of the Civil Rights Act of 1964, as amended in 1991, 42 U.S.C.A. § 2000e-2 *et seq* by terminating Plaintiff's employment for complaining about race, color, and national origin discrimination for filing charges of discrimination, complaints, and claims with the EEOC, NCDOL, NC OSHA and the Amazon Ethics Hot-Line during her employment.

89.     As a direct and proximate cause of Defendant's illegal and retaliatory termination of Plaintiff's employment, Plaintiff has suffered substantial damages including but not limited to, back and front pay, benefits associated with her employment, and has suffered and continues to suffer emotional distress, anxiety, depression, embarrassment, and humiliation.  Plaintiff is entitled to general and special damages, economic damages, punitive damages, and attorney's fees and costs as permitted by law.

### THIRD CAUSE OF ACTION
**(Violation of the North Carolina Retaliatory Employment Discrimination Act ("REDA")**
**N.C. Gen. Stat. § 95-240 *et seq.*)**

90.     Plaintiff re-alleges and incorporates the foregoing paragraphs as if fully set forth herein and further alleges as follows.

91.     Defendant employed more than 15 employees at all relevant times herein.

92.     Defendant is a person within the meaning of N.C. Gen. Stat. § 95-240(1).

93.     Plaintiff was an employee within the meaning of N.C. Gen. Stat. § 95-240 *et. seq*.

94.     Defendant is an employer within the meaning of N.C. Gen. Stat. § 95-240 *et seq*. ("REDA")

16

95.     Filing a claim or complaint, initiating any inquiry, investigation, inspection, proceeding or other action, or testifying or providing information to any person with respect to Chapter 97 of the General Statutes (the North Carolina Workers' Compensation Act) is a protected activity under N.C. Gen. Stat. § 95-241(a)(1).

96.     Filing a claim or complaint, initiating any inquiry, investigation, inspection, proceeding or other action, or testifying or providing information to any person with respect to Article 16 of Chapter 95 (the Occupational Safety and Health Act of North Carolina) is a protected activity under N.C. Gen. Stat. § 95-241(a)(1).

97.     Plaintiff engaged in a protected activity when she filed a workers compensation claim and when she submitted a complaint with NC OSHA against Amazon.

98.     Defendant violated REDA when it terminated Plaintiff's employment for the exercise of statutory rights under Article 16 of Chapter 95 (the Occupational Safety and Health Act of North Carolina) and Chapter 97 of the General Statutes (the North Carolina Workers' Compensation Act).

99.     As a direct and proximate cause of Defendant's illegal and retaliatory termination of Plaintiff's employment, Plaintiff has suffered substantial damages including but not limited to, back and front pay, benefits associated with her employment, and has suffered and continues to suffer emotional distress, anxiety, depression, embarrassment, and humiliation.  Plaintiff is entitled to general and special damages, economic damages, punitive damages, and attorney's fees and costs as permitted by law.

## FOURTH CAUSE OF ACTION

### (Disability Discrimination in Violation of Section 102(a) of the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. § 12112(a))

100.    Plaintiff re-alleges and incorporates the foregoing paragraphs as if fully set forth herein and further alleges as follows.

101.    Plaintiff was disabled as defined by the ADA and therefore Plaintiff is a member of the class of persons protected by state and federal statutes prohibiting discrimination based on her actual or perceived disability and/or request for accommodation.

102.    Plaintiff was qualified for her job and capable of performing the essential functions of her position with reasonable accommodations.

103.    Defendant as an employer is subject to North Carolina and federal laws prohibiting discrimination under Title I of the Americans with Disabilities Act of 1990, as amended ("ADA") and North Carolina public policy, namely N.C.G.S. §§ 143-422.2 and 168A, and thus, has a legal obligation to provide Plaintiff with a work environment free from discrimination.

104.    Defendant refused to take reasonably adequate steps to prevent discrimination against Plaintiff by knowingly taking adverse employment actions against Plaintiff because of her disability or perceived disability.

105.    Plaintiff is a "qualified individual with a disability which substantially limits a major life activity" as defined in Title I of the American with Disabilities Act.

106.    Plaintiff was perceived as disabled/regarded as being disabled by Defendant at all relevant times during her employment because of her disability.

107.    Plaintiff was regarded as being disabled by Defendant at the time Defendant terminated her employment because of her disability.

108.    The effect of Defendant's discriminatory practices has been to deprive Plaintiff of

equal employment opportunities and otherwise adversely affect her status as an employee due to her disability.

109.     No other similarly situated persons were subject to the same or substantially similar conduct.

110.     At all times material herein, the Defendant knew, or reasonably should have known, that the incidents, conducts, acts, and failures to act described herein above, would and did proximately cause Plaintiff to suffer emotional distress.

111.     Defendant's above-described conduct was intentional.

112.     Defendant's above-described conduct was done with malice or reckless indifference to Plaintiff's state and federally protected rights.

113.     As a direct and proximate result of Defendant's above-described actions, Plaintiff has suffered damages, including lost wages and benefits, emotional pain and suffering, embarrassment, and inconvenience; and she is entitled to such general and special damages, economic damages, punitive damages, and attorney's fees and costs as permitted by law.

**FIFTH CAUSE OF ACTION**
**(Retaliation in Violation of the ADA, as amended, 42 U.S.C. § 12203(a))**

114.     Plaintiff re-alleges and incorporates the foregoing paragraphs as if fully set forth herein and further alleges as follows.

115.     Defendant retaliated against Plaintiff for having a disability and work restrictions after she returned from being out of work for her disability.

116.     Defendant retaliated against Plaintiff by placing her on suspension and terminating her employment because of her disability.

117.     There may be more detrimental acts of which Plaintiff is unaware which may also constitute retaliation in that it harmed Plaintiff.

19

118.    The Defendant is liable to the Plaintiff for wrongful termination in violation of Title I of the Americans with Disabilities Act of 1990, as amended ("ADA") and North Carolina public policy, namely N.C.G.S. §§ 143-422.2 and 168A.

119.    A causal connection exists between Plaintiff's protected activities and Defendant's materially adverse actions; i.e., Defendant terminated Plaintiff's employment.

120.    Defendant's above-described conduct was intentional.

121.    Defendant's above-described conduct was done with malice and with reckless indifference to Plaintiff's state and federally protected rights.

122.    As a direct and proximate result of Defendant's above-described actions, Plaintiff has suffered damages, including lost wages and benefits, emotional pain and suffering, embarrassment, and inconvenience; and he is entitled to such general and special damages, economic damages, punitive damages and attorney's fees and costs as permitted by law.

### SIXTH CAUSE OF ACTION
**(Wrongful Termination in Violation of Public Policy, N.C.G.S. § 143-422.1 *et seq*., and N.C.G.S. § 168A)**

123.    Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

124.    It is the public policy of the State of North Carolina to protect and safeguard the rights and opportunities of all persons to seek, obtain and hold employment without discrimination.

125.    The adverse employment actions taken by Defendant including the termination of Plaintiff's employment was done for unlawful purposes in violation of the public policy of the State of North Carolina, specifically, the North Carolina Equal Practices Act, N.C.G.S. § 143-422.1 *et seq*., including N.C.G.S. § 143-422.2 which makes discrimination based upon race, color, national origin, and disability or handicap an unlawful practice in North Carolina.

20

126.     Plaintiff was terminated because of her race, color, national origin, disability, and/or Defendant's perception of Plaintiff's disability.

127.     There may be additional facts unknown by Plaintiff which may also constitute wrongful termination of Plaintiff's employment.

128.     Defendant's actions were intentional, willful, and/or taken with reckless disregard of Plaintiff's rights under the ADA and Title VII.

129.     A causal connection exists between Plaintiff's protected activities of reporting race and color discrimination on behalf another black employee, and race, color, national origin and disability discrimination on behalf of herself, and Defendant's adverse action of terminating Plaintiff's employment because of her race, color, national origin, disability, and reports of discrimination of the same.

130.     Defendant's conduct was intentional and made with reckless indifference to Plaintiffs state and federally protected rights.

131.     Defendant's reason for terminating Plaintiff's employment is not true or genuine and is a pretext for illegal discrimination based upon Plaintiff's membership in protected classes and participation in protected activities.

132.     Defendant is liable to Plaintiff for wrongful termination in violation of North Carolina public policy, including N.C.G.S. § 143-422.1 *et seq*., and N.C.G.S. § 168A.

133.     As a direct, proximate, and foreseeable cause of Defendant's actions, Plaintiff suffered lost back and front pay, benefits associated with her employment and has suffered and continues to suffer severe physical and emotional distress, anxiety, depression, embarrassment,

and humiliation. Plaintiff is entitled to general and special damages, economic damages, punitive damages, and attorney's fees and costs as permitted by law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff hereby respectfully requests that this Court enter judgment in favor of Plaintiff as against Defendant and enter an Order as follows:

A.  Permanently enjoin Defendant from engaging in the above alleged unlawful practices, policies, customs, and usages set forth herein and from continuing an and all other practices shown to be in violation of applicable law;

B.  Awarding Plaintiff compensatory damages, including but not limited to those for past and future pecuniary and non-pecuniary losses, emotional distress, mental anguish, anxiety, depression, embarrassment, and humiliation;

C.  Awarding Plaintiff punitive damages as against Defendant for all claims as allowed by law;

D.  Attorney's fees and costs of this action;

E.  Pre-judgment and post-judgment interest; and

F.  Granting any other such relief that the Court deems just and proper.

## **JURY TRIAL DEMAND**

Plaintiff hereby respectfully requests a trial by jury on all issues so triable.

*[Signature on following page]*

This the 20th day of November 2024.

Respectfully submitted,

*s/ Kyle T. Watson*
Kyle T. Watson
NC State Bar No. 57014
**THE WATSON LAW OFFICE, PLLC**
301 McCullough Drive, Suite 400
Charlotte, North Carolina 28262
Telephone: (704) 246-3514
Facsimile: (704) 885-5028
E-mail: kwatson@watsonattorney.com
*ATTORNEY FOR PLAINTIFF*

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No. 3:24-cv-00989-FDW-DCK**

| | |
|---|---|
| CLAUDIA BROWN | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| AMAZON.COM SERVICES LLC, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## CERTIFICATE OF SERVICE

The undersigned certifies that on November 20, 2024, this **AMENDED COMPLAINT** was electronically filed with the Clerk of Court using the CM/ECF system which will electronically notify all counsel of record.

November 20, 2024        *By Counsel*

                                 *s/ Kyle T. Watson*
                                 Kyle T. Watson (NC Bar No. 57014)
                                 **THE WATSON LAW OFFICE, PLLC**
                                 *ATTORNEY FOR PLAINTIFF*