IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:24-CV-00989-KDB-DCK

| | |
|---|---|
| CLAUDIA BROWN, <br><br> Plaintiff, <br><br> v. <br><br> AMAZON.COM SERVICES LLC, <br><br> Defendant. | **MEMORANDUM AND ORDER** |

**THIS MATTER** is before the Court on Defendant Amazon.com Services LLC's ("Amazon") Motion to Enforce Settlement Agreement (Doc. No. 24).[1,2] The Court has carefully considered this motion, the parties' briefs and exhibits, the testimony and oral argument on the motion at an evidentiary hearing on February 11, 2026 and Plaintiff's post-hearing Supplemental Response (Doc. No. 76). Because the Court finds that Plaintiff's attorney was given actual and apparent authority to enter into a settlement with Defendant and did so on the terms reflected in the Parties' written settlement agreement, the Court will **GRANT** the motion.

---

[1] The Parties have filed cross motions for Summary Judgment and Partial Summary Judgment which are mooted by the Court's enforcing the Parties' settlement. (Doc. Nos. 36, 53).

[2] Also, Plaintiff has filed a Motion to Strike her counsel's testimony because it revealed attorney-client communications. As the Court explained at the hearing, Plaintiff has waived the confidentiality of her communications with her counsel by presenting to the Court numerous emails, audio recordings and transcripts in support of her position. *Hawkins v. Stables*, 148 F.3d 379, 384 n.4 (4th Cir. 1998) (If a party voluntarily discloses a single communication protected by the attorney-client privilege, it waives the privilege for that communication and any other communications covering the same subject matter.). Therefore, that motion will be denied.

1

# I. LEGAL STANDARD

It is within the district court's "inherent power to enforce a settlement agreement." *Hensley v. Alcon Labs., Inc.*, 277 F.3d 535, 540 (4th Cir. 2002); *Chalifoux v. Wetzel Cnty. Hosp., Inc.*, No. 24-1108, 2025 WL 1879597, at *4 (4th Cir. July 8, 2025) (enforcing settlement agreement despite disagreement on Plaintiff's counsel's authority to settle). To exercise that power, the court "(1) must find that the parties reached a complete agreement" and "(2) must be able to determine its terms and conditions." *Id*. at 540–41. The district court's authority to grant a motion to enforce, then, "depends on there being a complete settlement agreement." *Smith-Phifer v. City of Charlotte*, 118 F.4th 598, 610 (4th Cir. 2024). Further, "'[I]f there is a factual dispute over the existence of an agreement, over the authority of attorneys to enter into the agreement, or over the agreement's terms,' a district court 'must conduct a plenary evidentiary hearing in order to resolve that dispute, and make findings on the issues in dispute.'" *Id*. (quoting *Hensley*, 277 F.3d at 541). In ruling on a motion to enforce a settlement, the Court draws upon standard contract principles. *Bradley v. Am. Household, Inc.,* 378 F.3d 373, 380 (4th Cir. 2004); *Hensley,* 277 F.3d at 540. One such principle is that the formation of a contract requires offer, acceptance, and consideration. *Kinesis Adver., Inc. v. Hill,* 652 S.E.2d 284, 292 (N.C. Ct. App. 2007). "It is essential to the formation of any contract that there be mutual assent of both parties to the terms of the agreement so as to establish a meeting of the minds." *Creech v. Melnik,* 495 S.E.2d 907, 911–12 (N.C.1988) (internal quotations and citations omitted). Typically, mutual assent to an agreement is "established by an offer by one party and an acceptance by the other...." *Id.* at 912.

The Court may also look to the law of the state where the relevant events occurred for guidance on the scope of an attorney's authority to settle litigation. *See Chalifoux*, 2025 WL 1879597, at *5; *Auvil v. Grafton Homes, Inc.*, 92 F.3d 226, 230 (4th Cir. 1996). "[T]here is a

2

Case 3:24-cv-00989-KDB-DCK    Document 77    Filed 02/18/26    Page 2 of 10

presumption in North Carolina in favor of an attorney's authority to act for the client he professes to represent." *Smith v. Young Moving & Storage, Inc.*, 167 N.C. App. 487, 493 (2004) (citation and quotation marks omitted); *Egan v. Buena Vista, Inc.*, No. 24 CVS 2547, 2024 WL 4456857, at *7–9 (N.C. Super. Oct. 9, 2024). Unless a plaintiff meets her burden of rebutting this presumption, the defendant is entitled to rely on it. *Id.*

For example, in *Purcell Int'l Textile Grp., Inc. v. Algemene AFW N.V.*, 185 N.C. App. 135 (2007), the defendants' counsel agreed to the terms of a settlement in which the defendants would pay the plaintiff $850,000 in three payments over a six-month period. While the defendants' counsel represented to the plaintiff that he had obtained his clients' approval, the total amount substantially exceeded the authority the defendants had given him. To make matters worse, the defendants' counsel never informed his clients of the agreement, never sent them the written agreement, forged their signatures on the agreement, and did not obtain a signed confession of judgment. Nevertheless, the trial court enforced the settlement over the defendants' objections, and the defendants appealed. 185 N.C. App. at 137-38. In upholding the trial court's decision, the Court of Appeals held:

> [Counsel's] actions were binding on defendants, who hired him to act as their agent in handling the case and negotiating a settlement. Defendants granted [Counsel] the authority to settle the case and never stripped him of that authority. Based on his actual authority, [Counsel] engaged in negotiations offering settlement figures of $400,000.00 and $500,000.00, and plaintiff declined both offers. Each time plaintiff declined a settlement offer, [Counsel] established a pattern of following up with a new offer featuring a larger amount of money. Thus, when [Counsel] offered a settlement of $850,000, which exceeded his actual authority, **plaintiff could have reasonably assumed that offer was within [Counsel's] authority and had no reason to know that [Counsel] had exceeded his limits**. Thus, the agreement negotiated by [Counsel] bound defendants despite the fact that [Counsel] exceeded his authority and violated his duty to defendants.

*Id.* at 139 (emphasis added). With these principles in mind, the Court evaluates the facts found below based on the documentary evidence and the Court's evidentiary hearing.

## II. FACTS AND PROCEDURAL HISTORY

Plaintiff Claudia Brown is a former Amazon employee, whose employment was terminated in June 2022. Doc. No. 8 at ¶¶ 23, 78. In November 2024, Brown filed this action, which, as amended, asserts various claims of employment discrimination under federal and state law as well as a claim under the Americans with Disabilities Act. *Id*. at ¶¶ 83-133. On July 3, 2025, the Parties and their counsel attended an all-day mediation, which was unsuccessful. *See* Doc. No. 18. Following the mediation, in response to an email from Amazon's counsel related to its upcoming motion for summary judgment, Ms. Brown's counsel, Kyle Watson, requested a call with Defendant's counsel to present a new settlement offer that Ms. Brown had asked him to present. Doc. No. 25-1 at pp. 11-12. That call occurred on July 22, 2025, and during the call, Mr. Watson communicated Ms. Brown's monetary demand.

The following day, July 23, 2025, Amazon's counsel sent the following communication to Ms. Brown's attorney:

> We're not yet in a position to respond to the $____ settlement demand,[3] but assuming we are able to reach a resolution, can you confirm you are good with the terms in the draft agreement, attached? In the event we reach agreement on an amount, we need to be sure we are agreed on the terms in the draft agreement. Also, should we reach an agreement, we would also need agreement on a joint submission indicating we have reached a resolution and requesting that the dispositive motion deadline be stayed.

*Id*. at p. 10; Doc. No. 25-2. Later that afternoon, Mr. Watson responded: "I believe we are good on all other terms but I will get back with you soon to confirm. I am also fine with a joint submission staying the dispositive motions deadline should an agreement be reached." Doc. No. 25-3.

---

[3] The Parties agreed to keep the amount of their settlement confidential and it is not necessary to the Court's decision to disclose the amount.

At the evidentiary hearing, Mr. Watson testified that following these communications, he spoke to Ms. Brown on the telephone and confirmed her agreement with the non-monetary terms of the proposed settlement, which had been discussed at the mediation.[4] At 8:37 a.m. the next morning, July 24, 2025, Mr. Watson sent an email to Amazon's counsel saying, "I am good with the other terms of the agreement." Doc. No. 25-1 at p. 9. At 10:35 a.m. and 12:19, Counsel for Defendant responded:

> Thanks for your note and agreement on the terms in the Confidential Settlement Agreement and General Release ("Agreement").
>
> Amazon accepts Plaintiff's $[___] total settlement demand subject to the terms stated in that Agreement.
>
> Per our prior discussion, we understand that the attorney fee portion of the $[total settlement] is $[___]. Please confirm that is correct and we will finalize the Agreement and return it for signature.
>
> ....
>
> In the interest of time, we went ahead and entered the allocation into the settlement agreement and created a final version, attached. Please review and have your client sign. If the attorney fee portion is different, let us know and we can adjust. Relatedly, to process payments, we will need a W-9 for your office, a W-4 and W-9 for plaintiff, and electronic transfer instructions. We will send you blank forms for Plaintiff and instructions for electronic transfer via separate email.
>
> Relatedly, we prepared the attached joint motion and order. Please review and confirm we have your consent to sign the motion on your behalf

Doc. No. 25-1 at pp. 8-9; Doc. No. 25-4. At 11:30 a.m. on July 24, Mr. Watson wrote to Ms. Brown, requesting that she call him "as soon as possible" because "[w]e have obtained the exact settlement that you requested." Doc. No. 49 at p.27.

---

[4] At the evidentiary hearing, Amazon's counsel represented to the Court that he had discussed Amazon's proposed non-monetary terms related to confidentiality, etc. in caucus with the Mediator. The Court finds that it is a reasonable inference that the Mediator in turn communicated those terms to Plaintiff and her counsel, thereby corroborating Mr. Watson's testimony with respect to the non-monetary terms being discussed at the mediation.

Mr. Watson responded to Amazon at 12:26 p.m.:

> Understood. You have my consent to e-sign the joint motion on my behalf. See attached updated version with only my signature block changed. I am waiting to get back in touch with my client regarding the allocation and W-4 and W-9 for Plaintiff. I will send them all (including our W-9) in one email as soon as I get in touch with her.

*Id*. at pp. 7-8. Mr. Watson then had a 23 minute call with Ms. Brown during which Mr. Watson went over the details of the agreement, saying that it included "everything we've already talked about from mediation." Doc. No. 76-2 at 28. He specifically discussed "a confidentiality clause," a broad release, dismissing the lawsuit, a "no-hire" provision effectively stating, "you guys won't get back into another employment relationship in the future," "no admission of wrongdoing on either side," and "other normal clauses," which would not be different "than what they would put in any other settlement agreement." *Id*. at 28-29.

At 1:31 p.m., Mr. Watson wrote to Ms. Brown:

> As discussed on our calls today, please confirm that you have agreed to settle this case and accept Amazon's total offer of $\_\_\_, with $\_\_\_ of that amount for attorney's fees, leaving your compensation to be $\_\_\_\_ with $\_\_\_\_ to be taxed at you regular tax rate.
> You may simply respond to this email to confirm.

Doc. No. 31-2 at p. 6. Ms. Brown responded at 4:03 p.m.: "I've reviewed the settlement offer. I accept the $\_\_\_\_ offer as outlined in your email. Please proceed with the necessary paperwork." *Id*. At the same time, Mr. Watson received a "Dropbox" notice that Ms. Brown had viewed the Settlement Agreement. Doc. No. 74. At the evidentiary hearing, Ms. Brown testified that in sending this message, she had only meant to convey her agreement to the monetary terms of the settlement. With respect to the additional terms, she said that she had opened, but not been able to

6

Case 3:24-cv-00989-KDB-DCK    Document 77    Filed 02/18/26    Page 6 of 10

actually view the agreement because of internet issues and was unaware of the agreement's non-monetary terms until the next day.

In the afternoon of July 24, the Parties filed a Joint Motion to Stay Proceedings, advising the Court of the settlement. The motion stated that, "the Parties agreed to terms to resolve this case and have formalized same in a settlement agreement," and that "Plaintiff intends to execute the settlement agreement today, July 24, 2025." Doc. No. 25-4; Doc. No. 19.

The next day, July 25, Mr. Watson followed up with Ms. Brown regarding signing the Settlement Agreement. Doc. No. 74-1. Initially, she responded positively, saying "So sorry for the delay! I've been out of town with terrible internet access, so I'm just now catching up on those emails. I've received the tax forms and settlement agreement and will sign them immediately. Thanks so much for your help and understanding." Ms. Brown returned signed tax forms to Mr. Watson mid-afternoon. Then, her tone changed. At 3:32 p.m., Ms. Brown wrote to Mr. Watson saying, for the first time, that she had "experienced significant technical difficulties accessing the document," had "serious concerns regarding several clauses with the agreement" and "cannot in good conscience sign the agreement in its present form." Doc. No. 49 at p. 43. She asked Mr. Watson to go back to Amazon to "revisit the terms." *Id*. He did so, but further discussions among the Parties were unsuccessful, and Amazon ultimately filed its motion to enforce the settlement on August 18, 2025. Additional motions for Summary Judgment and Partial Summary Judgment were filed by the Parties in October and December 2025. *See* Doc. Nos. 36, 53.

On January 28, 2026, this matter was reassigned to the undersigned. A hearing was scheduled on the pending motions and that hearing, during which testimony was taken from Mr. Watson and Ms. Brown, was held on February 11, 2026. The motions are ripe for the Court's ruling.

### III. DISCUSSION

The ultimate question before the Court on this motion is whether Ms. Brown and Amazon entered into an enforceable settlement agreement. *See Hensley*, 277 F.3d at 540-41. As detailed above, there is no dispute that Ms. Brown's counsel agreed to the terms of a written settlement agreement with Amazon, although Ms. Brown never signed the agreement. *See* Doc. No. 25-2 (terms of the settlement agreement). Therefore, if her counsel had the authority – either actual or apparent – to agree to the settlement then it must be enforced. The Court concludes Mr. Watson had at least apparent authority[5] to bind Ms. Brown to a settlement on the terms reflected in the written agreement. *See Chalifoux*, 2025 WL 1879597, at *4; *Egan,* 2024 WL 4456857, at *7–9 (applying presumption in North Carolina in favor of an attorney's authority to act for the client he professes to represent);

"Apparent authority results from a principal's manifestation of an agent's authority to a third party, regardless of the actual understanding between the principal and agent." *Sing Fuels Pte Ltd. v. M/V Lila Shanghai*, 39 F.4th 263, 275 (4th Cir. 2022); *see also* Restatement (Third) of Agency § 2.03 (2006). The relevant conduct here is that of the principal who, by "acts or omissions, causes a third party to rely on the agent's authority to act on the principal's behalf." *Id.* at 275. The third party (here, Amazon) must "exercise 'good faith' and 'reasonable prudence' in their reliance upon the apparent agent." *Id.* All the elements of "apparent authority" are present here. Ms. Brown

---

[5] Ms. Brown also gave her counsel actual authority to enter into the settlement in the afternoon of July 24, 2025, after Mr. Watson discussed the monetary and non-monetary terms of the agreement with her ("I've reviewed the settlement offer. I accept the $____ offer as outlined in your email. Please proceed with the necessary paperwork."), although she then declined to sign the settlement agreement the next day. Because the Court easily finds that Ms. Brown's counsel had apparent authority to enter the settlement on July 24, and communicated her acceptance of the settlement to Amazon's counsel, it need not address how Ms. Brown's different instructions to her counsel on July 25 might change the impact of the Court's finding of actual authority.

was present and participated in the mediation where Mr. Watson represented her in seeking a settlement and following the mediation she directed him to present a new settlement proposal to Amazon's counsel. *See Chalifoux,* 2025 WL 1879597, at *6-7 (finding apparent authority where "[n]ot only did [plaintiff] retain [counsel] to represent him in his lawsuit against [the defendant], he also permitted [counsel] to engage in substantive negotiations with [defendant's counsel] … [and counsel] was substantially involved in the … mediation … with [plaintiff] also present.").

Further, it was reasonable for Amazon to rely in good faith on Mr. Watson's unequivocal agreement to the terms of the settlement and consent to notifying the Court of the Parties' agreement. There was no reason for Amazon to think Mr. Watson did not have authority to relay Ms. Brown's agreement. Any misunderstanding regarding the settlement occurred only between Plaintiff and her counsel, and the validity of the agreement among counsel is unaffected by that unilateral "mistake." *See Egan,* 2024 WL 4456857, at *7–9 ("Unfortunately for Plaintiff, however, a misunderstanding between a client and his counsel does not prevent the formation of a contract between Plaintiff and Defendants when, after receiving the draft Settlement Agreement, [Plaintiff's counsel] unequivocally told both Defendants and the Court, "the case is settled"; *Purcell,* 185 N.C. App. at 139.

In sum, the Court determines that Mr. Watson had apparent authority to act on behalf of Ms. Brown and reached a binding settlement with Amazon on the terms described in their written agreement, even though Ms. Brown later refused to sign the agreement. The motion to enforce the settlement will accordingly be granted.[6]

---

[6] For the avoidance of doubt, no filing or statement of any party in connection with this motion or otherwise related to the potential enforcement of a settlement shall constitute a violation of the confidentiality provisions of the settlement, which will be in force only after entry of this Order.

9

Case 3:24-cv-00989-KDB-DCK    Document 77    Filed 02/18/26    Page 9 of 10

## IV. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Defendant's Motion to Enforce Settlement Agreement (Doc. No. 24) is **GRANTED**;

2. This matter is resolved in accordance with the terms of the settlement agreement agreed between Amazon and Plaintiff's former counsel;

3. Each party shall pay its own costs and fees;

4. Plaintiff's Motion to Strike (Doc. No. 75) is **DENIED;**

5. The Parties' Summary Judgment and other motions (Doc. Nos. 36, 49, 53, 68) are **DENIED** as moot; and

6. The Clerk is directed to close this matter in accordance with this Order.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: February 18, 2026

Kenneth D. Bell
United States District Judge